IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

STEPHEN L. HAWKS,

    Plaintiff,

v.                                                              No. Civ. 07-348 LH/LAM

GREG ABBOTT, Individually and Personally
as Attorney General of Texas,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the following motions: (1) Plaintiff Stephen Hawks' Motion for Leave of Court to File Plaintiff's Second Amended Complaint (Doc. 67); (2) Defendant Greg Abbott's Motion to Dismiss Pursuant to Rule 12 (Doc. 76); (3) Defendant Greg Abbott's First Amended Motion to Dismiss Pursuant to Rule 12 (Doc. 84); (4) Plaintiff's "Notice of Objection to Order (Doc. 93) Granting Defendant Abbott's Motion to Stay the Rule 16 Conference and Discovery (Doc. 88) Pursuant to Rule 72(a) Fed. R. Civ. P." (Doc. 94); (5) Defendant's "Motion to Strike Plaintiff's Reply Briefs [Doc. 98-99]" (Doc. 100); and (6) Plaintiff's Motion to Dismiss Without Prejudice (Doc. 102). The Court after considering the motions, briefs, evidence, and applicable law finds that Defendant Greg Abbott's first amended motion to dismiss should be granted and Plaintiff's case dismissed. Plaintiff's motion to file a second amended complaint will be denied based on futility of amendment. All the other pending motions will be denied as moot.

**I.    BACKGROUND**

    This case began as a suit by Plaintiff Hawks, proceeding *pro se*, against Defendants Anita

Castilleja, Cindy Groomer, Brooke Dorman, and Erik Engen, persons he alleged were employees of the Child Support Division in the Texas Attorney General's Office who committed various wrongs arising out of attempts to enforce a child support order against him. *See* Compl. (Doc. 1). Plaintiff voluntarily moved to dismiss Cindy Groomer as a defendant, on the grounds that she was deceased (Doc. 20), which this Court granted on February 15, 2008 (Doc. 33). On June 30, 2008, in a Memorandum Opinion and Order (Doc. 53), this Court dismissed Defendants Dorman and Castilleja for lack of personal jurisdiction.

On August 22, 2008, Plaintiff filed a notice that he was requesting the Court to dismiss Defendant Erik Engen without prejudice. (Doc. 66). Plaintiff also simultaneously filed an amended complaint bringing suit only against Defendant Greg Abbott, individually and personally as Attorney General of Texas, for various wrongs arising out of Defendant's attempts to enforce a child support order against him. (Doc. 65). Defendant Abbott is therefore the only Defendant remaining in the case. Plaintiff asserts claims against Defendant generally under 42 U.S.C. § 1983 for violations of the Fourth Amendment, the Eighth Amendment, the Due Process Clause of the Fifth Amendment, the Hobbs Act, 18 U.S.C. § 1951, and the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45. He also asserts state claims against Defendant for intentional and negligent infliction of emotional distress.

On August 27, 2008, prior to Defendant Abbott being served with the amended complaint against him, Plaintiff Hawks filed a motion for leave to file a second amended complaint against Defendant Abbott in his personal and individual capacity. (Doc. 67). The proposed second amended complaint contains virtually the same factual allegations against Defendant Abbott as in the amended complaint against him. The proposed second amended complaint also adds a claim for violation of his due process and equal protection rights under the Fourteenth Amendment.

On October 24, 2008, Scot M. Graydon filed a motion for *pro hac vice* admission in order to represent Defendant in this action. (Doc. 74). Before the Court ruled on Mr. Graydon's motion, and thus before he was admitted to practice before this Court, Mr. Graydon filed a motion to dismiss on behalf of Defendant. (Doc. 76). On November 7, 2008, the Honorable Judge Lourdes A. Martinez granted Mr. Graydon's motion for *pro hac vice* admission (Doc. 82), and on November 13, 2008, Mr. Graydon filed a first amended motion to dismiss on behalf of Defendant (Doc. 84), raising the same arguments as in his initial motion to dismiss. Defendant's original motion to dismiss (Doc. 76) will thus be denied as moot.

On November 18, 2008, Defendant filed a Motion to Stay the Rule 16 Conference and Discovery (Doc. 88) pending the Court's resolution of Defendant's pending motion to dismiss for lack of jurisdiction. After balancing the competing interests, Judge Martinez granted Defendant's motion to stay for reasons of judicial economy and fairness. (Doc. 93). On December 17, 2008, Plaintiff filed a "Notice of Objection to Order (Doc. 93) Granting Defendant Abbott's Motion to Stay the Rule 16 Conference and Discovery (Doc. 88) Pursuant to Rule 72(a) Fed. R. Civ. P." (Doc. 94), appealing Judge Martinez's order staying discovery. Defendant filed a response to Plaintiff's objection on December 22, 2008. (Doc. 96). Plaintiff filed a reply on January 8, 2009. (Doc. 99). On January 16, 2009, Defendant filed a "Motion to Strike Plaintiff's Reply Briefs [Doc. 98-99]," arguing that the reply presents irrelevant and untimely arguments. (Doc. 100).

On February 4, 2009, Plaintiff filed a voluntary "Motion to Dismiss without Prejudice" (Doc. 102), on the basis that he does not believe he properly served Defendant. Defendant, however, "requests that this Court rule on the matter of whether or not Defendant Abbott is subject to personal jurisdiction of this Court in an effort to avoid needless repetition of the jurisdictional arguments of the parties in the event that Hawks refiles his lawsuit." (Doc. 105). The Court will therefore first

3

consider Defendant's amended motion to dismiss before turning to the merits of the other pending motions.

## II.     DISCUSSION

### A.     Defendant's First Amended Motion to Dismiss Pursuant to Rule 12 (Doc. 84)

Federal Rule of Civil Procedure 12(b) allows a party to file a motion asserting a number of defenses, including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2), & (6). In reviewing a Rule 12(b)(1) motion that facially attacks the sufficiency of the complaint's allegations as to subject matter jurisdiction, the court presumes that all of the allegations contained in the complaint are true. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). The party invoking the federal court's jurisdiction has the burden to establish jurisdiction. *Basso v. Utah Power & Light. Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Similarly, when facing a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). Where no evidentiary hearing is held, a plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Only the well-pled facts of the complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.* In determining whether the plaintiff made the necessary prima facie showing, the court must resolve any factual disputes in the plaintiff's favor. *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007). "The plaintiff may make this prima facie showing by

demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,127 S.Ct. 1955, 1974 (2007); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge*, 493 F.3d at 1177 (internal citation omitted) (emphasis in original). In ruling on a Rule 12(b)(6) motion, courts continue to assume the truth of the well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See id.* A complaint does not need to include detailed factual allegations, so long as it provides grounds for the plaintiff's entitlement to relief beyond labels, conclusions, and formulaic recitations of the elements of the cause of action. *See Twombly*, 127 S.Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

### 1. Personal Jurisdiction

The personal jurisdiction requirement flows from the Due Process Clause of the Fifth Amendment, restricting judicial power as a matter of individual liberty. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000). Personal jurisdiction protects an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum. *Id.* at 1211. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotations omitted). "Before a federal court can assert personal jurisdiction over a defendant in a federal

5

question case, the court must determine: (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay*, 205 F.3d at 1209 (quotations omitted).

The federal statute here, 42 U.S.C. § 1983, does not confer nationwide service of process or jurisdiction upon federal district courts. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). The Plaintiff has also not shown that the Hobbs Act, 18 U.S.C. § 1951, or the FTC Act, 15 U.S.C. § 45(a), confer nationwide service of process. Nor do the language of those acts indicate that Congress conferred nationwide service of process for private rights of action. Therefore, according to Federal Rule of Civil Procedure 4(k)(1)(A), the Court refers to the New Mexico long-arm statute, N.M. Stat. Ann. § 38-1-16, to determine whether personal jurisdiction exists over a non-resident, out-of-state defendant. *See* Fed. R. Civ. P. 4(k)(1)(A) (2007) ("Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."); *Trujillo*, 465 F.3d at 1217.

New Mexico's long-arm statute uses a three-step test to decide if personal jurisdiction exists: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act. *See Rogers v. 5-Star Mgmt.*, 946 F. Supp. 907, 911 (D.N.M. 1996) (Black, J.) (quoting *State Farm Mut. Ins. Co. v. Conyers*, 109 N.M. 243, 244 (1989)). The reach of New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible. *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463 (1994). Because New Mexico equates the first and third steps of the test with the due process standard of minimum contacts, the necessity of a technical determination of whether the non-resident defendant committed an enumerated act has

evaporated and the analysis collapses into a search for the outer limits of what due process permits. *See id.*; *Santa Fe Techs. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 13, 131 N.M. 772 (2001).

A plaintiff must show that the defendant had sufficient minimum contacts with New Mexico so as not to offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In determining whether there were sufficient minimum contacts, the court looks at the degree to which the defendant availed herself to the privileges of conducting business within the forum state, thus invoking the benefits and protections of the state's laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's conduct and connection with the forum state must be such that he would reasonably anticipate being haled into court there. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Defendant has not submitted any affidavits to contest the allegations in Plaintiff's complaint. The only evidence offered by Defendant is a news article dated December 2, 2002, asserting that the Texas Governor had announced on that date that he appointed Attorney General-elect Greg Abbott to be the state's attorney general. This news article, however, is hearsay, and thus not admissible evidence upon which the Court may rely. The Court will nonetheless grant Defendant's request to take judicial notice of the fact that he was not the Texas Attorney General prior to December 2, 2002. A court may take judicial notice of a fact that is not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). After examining numerous news sources whose accuracy cannot reasonably be questioned, and in light of the fact that Plaintiff has not offered any reasons to question the accuracy of the news article provided by Defendant, the Court will take judicial notice of the fact that Defendant Greg Abbott assumed the duties of Texas Attorney General on December 2, 2002. *See*, *e.g.*, Attorney General of Texas (Dec. 2, 2002)

http://www.oag.state.tx.us/oagNews/release.php?id=16; Decision 2006 Election Coverage: Greg Abbott, http://www.kcbd.com/global/story.asp?s=5547921&ClientType=Printable.  Because this fact is the only one offered by Defendant as admissible evidence to dispute the facts alleged in Plaintiff's complaint, the Court must assume all other facts in Plaintiff's complaint to be true.  *See Wenz*, 55 F.3d at 1505 (allegations in complaint must be taken as true to extent they are uncontroverted by defendant's affidavits).  As to the allegations concerning Defendant Abbott's conduct, the Court will confine its analysis to those allegations occurring after December 2, 2002.

Turning to the facts alleged in the amended complaint that link Defendant Abbott to New Mexico, Plaintiff asserts that beginning in April 2001, Defendant maintained contacts with Plaintiff in New Mexico through writings, telephone conversations, demands, issuances of arrest warrants, wage garnishments, federal tax interceptions, and subpoenas.  Am. Compl. (Doc. 65) ¶ 15.  Specifically, he asserts that on April 3, 2006, and May 3, 2006, Defendant caused $1314.40 to be garnished from Plaintiff's federal disability allotment to pay on a zero balance of accrued arrearages.  *Id.* ¶ 64.  Plaintiff also asserts that on numerous occasions between April 1991 and March 2008, Defendant garnished or tried to garnish Plaintiff's wages.  *Id.* ¶ 49.  Plaintiff further alleges that Defendant on numerous occasions between July 1988 and March 2008 caused Plaintiff's federal tax returns to be intercepted.  *See id.* ¶ 47.  Although the events occurring before December 2, 2002, cannot be attributed to Defendant, Defendant Abbott has not provided the Court with evidence that the alleged garnishments and interceptions that occurred after December 2, 2002, did not require his personal involvement or did not involve reaching out to New Mexico.  Consequently, the facts as alleged indicate that the garnishment of Plaintiff's wages and disability allotment and the interception of his federal tax return constitute activities purposefully directed toward New Mexico.

This does not end the inquiry, however, as Plaintiff must also show that the causes of action

8

arose from Defendant Abbott's New Mexico contacts. Plaintiff cannot make this showing. As to Count One, Plaintiff alleges that Defendant violated Plaintiff's Fourth Amendment rights by employing false allegations and fraudulent records to obtain arrest warrants. Count One is based on actions taken in 1995 through 1998 by a predecessor Texas Attorney General in presenting erroneous arrearage calculations before a grand jury and causing a federal criminal non-support offense report to be delivered to an Assistant United States Attorney in the Northern District of Texas. *See id.* ¶¶ 51-60. Similarly, Count Two alleges an Eighth Amendment violation arising from Plaintiff's subsequent incarceration. Having occurred before Defendant Abbott was Attorney General, none of the alleged facts supporting Plaintiff's Fourth and Eighth Amendment claims can be attributed to Defendant Abbott, and thus, these causes of action do not arise from Defendant Abbott's activities in New Mexico.

Count Three, violation of due process, alleges that Defendant Abbott denied Plaintiff access to records and employed false records to deprive Plaintiff of his due process rights. *See id.* ¶¶ 85-86. The denial of access to records occurred in Texas, not New Mexico. *See id.* ¶¶ 38-41.[1] Likewise, Defendant Abbott's alleged miscalculations of arrears also occurred in Texas, not New Mexico. *See id.* ¶¶ 24-33. The gravamen of Plaintiff's complaint is that Defendant engaged in a pattern or practice of miscalculating child support arrearages. *See id.* ¶ 21. These alleged miscalculations were based on a Texas state court's modification of a child support order on February 18, 1999. *See id.* ¶¶ 25-33. The alleged miscalculations committed by Defendant were all the same errors found in the modified child support order. *Compare id.* ¶¶ 29-32 *with id.* ¶¶ 33-35. Similarly, the alleged

---

[1]Plaintiff, in Count Three of his proposed second amended complaint, omits the allegation that Defendant Abbott illegally denied him access to material records. *See* Pl.'s Second Am. Compl. (Doc. 67) ¶¶ 85-91.

9

false and erroneous records used by Defendant in his enforcement efforts were based on the miscalculations in the modified child support order issued by the Texas state court. Although Plaintiff may have felt the injury from the garnishments in New Mexico, Count Three arose from Defendant Abbott's actions in Texas.

Count Four, violation of the Hobbs Act, is based on Defendant's alleged reporting of erroneous arrearage amounts to credit reporting agencies and employing false allegations and erroneous arrearage calculations to cause interstate child support to be extorted from Plaintiff. Similarly Count Five, violation of the FTC Act, is based on Defendant using false allegations and records to cause interstate child support to be extorted from Plaintiff. There is nothing in the complaint, however, that links the alleged reporting of erroneous arrearages to credit reporting agencies to New Mexico or to Defendant Abbott personally. Although the amended complaint alleges that Defendant Abbott took some actions to garnish Plaintiff's wages and federal disability allotment in New Mexico, the erroneous arrearage calculations, the child support order, and the order enforcing child support obligation on which the garnishments were based all occurred in Texas. *See id.* ¶¶ 24-33, 44. Plaintiff's injury – the garnishments – may have effected him in New Mexico, but the alleged wrong committed by Defendant Abbott occurred due to his miscalculations in Texas. The actions Defendant Abbott allegedly took to enforce the child support orders in New Mexico were actions ancillary to each of Plaintiff's causes of action. *See DeVenzeio v. Rucker, Clarkson & McCashin*, 1996-NMCA-064, ¶ 12, 121 N.M. 807 (holding there was no personal jurisdiction over California attorney, even though he sent mail and letters to plaintiffs in New Mexico, because communications were ancillary to primary function of providing legal services in California). Moreover, Defendant Abbott did not choose New Mexico as the state to enforce the child support order; Plaintiff chose New Mexico by moving to the state and continuing to reside

here. *Cf. In re Marriage of Wallick*, 524 N.W.2d 153, 157-58 (Iowa 1994) (holding that Iowa court did not have personal jurisdiction over wife who lived in Vermont in suit by husband to modify Connecticut child support decree, even though Vermont office of child support enforcement initiated Iowa proceedings to enforce Connecticut judgment).

Finally, Count Six alleges causes of action for intentional infliction of emotional distress ("IIED"), or alternatively, negligent infliction of emotional distress ("NIED"). These claims are based on Defendant Abbott intentionally or negligently manipulating false information contained in erroneous accounting records to injure Plaintiff. Am. Compl. (Doc. 65) ¶¶ 116-117. For the same reasons discussed above, the accounting errors allegedly occurred in Texas, not New Mexico, and any efforts by Defendant Abbott to enforce the child support orders in New Mexico were ancillary to the activities in Texas.

In sum, Plaintiff's amended complaint does not establish that any of his causes of action arose from Defendant Abbott's activities directed to New Mexico. The Court therefore does not have personal jurisdiction over Defendant Abbott and this case must be dismissed.

### 2. *Rooker-Feldman* Doctrine

Alternatively, even if the Court had personal jurisdiction over Defendant, Plaintiff's claims must be dismissed based on the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine precludes federal district courts from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a state-court judgment. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006). State proceedings have ended for purposes of *Rooker-Feldman* if the state court issued a judgment and the losing party allowed the time for appeal to expire. *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006). "'*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks

review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment.'" *Bolden v. City of Topeka*, 441 F.3d 1129, 1141 (10th Cir. 2006) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 86-87 (2d Cir. 2005)). The doctrine applies where a state-court loser brings a federal case complaining of injuries caused by the state-court judgment and inviting the federal court to review and reject the judgment. *Mo's Express*, 441 F.3d at 1234. In determining whether the doctrine applies, the federal court must ask whether the state-court judgment caused the injury for which the plaintiff seeks redress. *Id.* at 1237. Where the requested relief would not undo or reverse the state-court judgment, the doctrine does not apply. *Id.* Courts must apply the *Rooker-Feldman* doctrine narrowly and should not use the doctrine as a substitute for ordinary principles of preclusion. *See id.* at 1234.

Plaintiff's claims before this Court seek to undo or reverse the effect of the Texas state court child support order and the order enforcing child support obligation. Plaintiff asserts that the state court entered a modified child support order on February 18, 1999, that was erroneous because it did not reflect that his children resided with him for certain periods and that his daughter was self-emancipated in July 1997. Am. Compl. (Doc. 65) ¶¶ 29-33. Plaintiff argues that Defendant Abbott, per the modified order, subsequently engaged in a pattern and practice of miscalculating child support accrual amounts, arrears, interest, receipt amounts, and amounts applied and balances. *Id.* ¶¶ 21, 33-36. Although Plaintiff couches his claims as concerning Defendant Abbott's enforcement of the orders, he identifies Defendant's errors as the identical ones made by the Court in its modified child support order. *Compare id.* ¶¶ 29-32 *with id.* ¶¶ 34-35. The alleged wrongfulness in Defendant Abbott's enforcement methods all stem from the miscalculations Plaintiff asserts occurred in the modified child support order. Even Plaintiff's allegations of false arrest under the Fourth Amendment and unjust incarceration under the Eighth Amendment arise from the same

miscalculations. Plaintiff is thus alleging that his injuries were caused by the erroneous child support enforcement order, not from independent wrongful acts taken by Defendant Abbott in enforcing the orders. Because the real underlying issue in determining whether Defendant Abbott properly enforced the orders is whether the modified child support order correctly calculated the amount Plaintiff owed, Plaintiff's claims are inextricably intertwined with the state-court child support orders.

Accordingly, even in light of the narrow scope of the *Rooker-Feldman* doctrine, the Court concludes that the doctrine bars this Court from considering Plaintiff's claims, which must be dismissed for lack of subject matter jurisdiction. *See Erlandson v. Northglenn Municipal Court*, 528 F.3d 785, 789-90 (10th Cir. 2008) (holding that, according to *Rooker-Feldman* doctrine, federal district court lacked subject-matter jurisdiction to consider plaintiff's constitutional challenges under § 1983 to his municipal court conviction); *Bolden*, 441 F.3d at 1145 ("To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings."); *Zirkind v. New York*, 2008 WL 199473, *1 (D.N.J. Jan. 18, 2008) (unpublished opinion) (holding that *Rooker-Feldman* barred plaintiff's claims under § 1983, because even though plaintiff attempted to re-characterize nature of cause of action by alleging conspiracy-type theories and action for damages, gravamen of claim was that child support order was unlawful to extent it obligated plaintiff to pay support for child over age of 21 and complaint plainly sought to void or overturn adverse rulings); *Laskowski v. Attorney General of Texas*, 2006 WL 2479101, *2-4 (S.D. Tex. Aug. 25, 2006) (unpublished

opinion) (holding that court lacked subject-matter jurisdiction under *Rooker-Feldman* over plaintiff's constitutional claims under § 1983 and state law claims, because thrust of claims were directed against child support judgment, where he asserted that his rights were violated when state court issued child support judgment for arrearages and by state defendants arising out of enforcement measures taken through child support process).

### 3. Failure to State a Claim

Even if the Court had jurisdiction over this case, Plaintiff's amended complaint should be dismissed for failure to state a claim. Plaintiff's sole allegations of wrongful conduct by Defendant Abbott relate to his lawful collection efforts on the Texas modified child support order. Although Plaintiff alleges that the modified order itself was in error, that order remained in effect during Defendant's enforcement actions. The alleged miscalculations committed by Defendant were all the same errors found in the modified child support order. Similarly, the alleged false and erroneous records used by Defendant in his enforcement efforts were based on the miscalculations in the modified child support order. So long as that order remained in effect, Defendant was entitled to use every legal means to enforce Plaintiff's obligations under it. Plaintiff has not alleged sufficient facts to show that Defendant took illegal means to enforce the order, only that his enforcement efforts were based on miscalculations in the order. Lawful collection measures on child support arrearages do not amount to constitutional violations. Accordingly, Plaintiff's claims should be dismissed for failure to state a claim. *See Roberts v. Nicholas*, 2007 WL 5145353, *5 (D. Md. Jan. 26, 2007) (unpublished opinion) ("As the Maine Support Order remains in effect, the Defendants are entitled to every legal means available to enforce Roberts's obligations under it, including the collection efforts Roberts mischaracterizes as violations of his civil rights: filing a lien on his federal tax returns, reporting his arrearages to national credit bureaus, sending him collection notices,

attempting to withhold his wages, and notifying him of possible criminal liability under the Child Support Recovery Act. Such alleged lawful collection measures on child support arrearages do not amount to constitutional violations."), *aff'd by* 261 Fed. Appx. 471 (4th Cir. Jan. 9, 2008).

Furthermore, Counts One and Two must be dismissed for the additional reason that they are based on actions taken by Defendant Abbott's predecessor. Plaintiff alleges that he was arrested on or about December 8, 1995, and that a federal report submitted by the Texas Attorney General on December 2, 1998 caused the United States to arrest him, resulting in his subsequent conviction and sentence of 24 months in a federal correctional institution. *See* Am. Compl. ¶¶ 51-60. These events occurred well before Defendant Abbott became Attorney General, and thus, he cannot be held individually liable for Plaintiff's claims under the Fourth and Eighth Amendments.

Plaintiff's claims brought pursuant to the Hobbs Act and FTC Act must also be dismissed because those acts do not confer enforceable rights for private plaintiffs under § 1983. Section 1983 only creates a private right of action for violation of a federal law when Congress unambiguously intended for the law to create rights enforceable by individual plaintiffs. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 282-83 (2002). Determining whether a federal statute confers an enforceable right under § 1983 is no different from the initial inquiry in an implied right of action case. *Id.* at 284-85. "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286. Numerous courts have concluded, and this Court agrees, that Congress did not intend to create a private right of action to enforce the Hobbs Act or the FTC Act. *See, e.g.*, *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir. 1999) (no private right of action under 18 U.S.C. § 1951) (and cases cited therein); *American Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992) (citing *Baum v. Great Western Cities, Inc. of New Mexico*, 703

F.2d 1197, 1209 (10th Cir. 1983)) (no private right of action under FTC Act); *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097, 1099 (D. Colo. 1986) (no private right of action under § 1951).

Finally, Count VI must also be dismissed for the additional reason that the facts alleged do not support the asserted claims. To establish a claim for IIED under New Mexico law, the plaintiff must show that (1) the defendant's conduct was extreme and outrageous under the circumstances; (2) the defendant acted intentionally or in reckless disregard for the plaintiff; (3) the plaintiff experienced extreme and severe emotional distress; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607. Liability only arises where the conduct is so extreme and outrageous as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *See id.* As a threshold matter, the trial court must determine as a matter of law whether the conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort. *Id.* ¶ 26. Plaintiff's allegations are insufficient as a matter of law to demonstrate extreme and outrageous conduct. According to the allegations, Defendant Abbott was attempting to enforce a child support order. Although the underlying order was based on alleged miscalculations, the order was valid and nothing in the complaint demonstrates conduct by Defendant Abbott in enforcing the order that goes beyond all possible bounds of decency to support an IIED claim. As for the NIED claim, "NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Fernandez v. Walgreen Hastings Co.*, 1998-NMSC-039, ¶ 6, 126 N.M. 263. The NIED tort clearly does not fit the claims alleged in the amended complaint, and thus Plaintiff's NIED claims must also be

dismissed.

In sum, even if the Court had jurisdiction over the claims in Plaintiff's amended complaint, the Court would dismiss all the claims on their merits.

### B. Plaintiff's Motion for Leave of Court to File Plaintiff's Second Amended Complaint (Doc. 67)

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course before being served with a responsive pleading. Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, although Plaintiff had not yet served Defendant Abbott before filing his motion for leave to file a second amended complaint, Plaintiff had already filed an amended complaint in this case, and thus could not file another amended complaint without leave of the Court. The Court will deny leave to file Plaintiff's proposed second amended complaint because the amendment would be futile. The second amended complaint does not change the amended complaint's defects of personal jurisdiction and subject matter jurisdiction that are the grounds for dismissal of Plaintiff's case. Moreover, all the claims in the second amended complaint, including Plaintiff's equal protection claim, should be dismissed on their merits for the same reasons discussed herein. Consequently, even if the Court granted Plaintiff's motion to file a second amended complaint, the Court would dismiss Plaintiff's case on the grounds stated in this opinion. Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint will therefore be denied.

### C. Other Pending Motions

Given this Court's ruling that Plaintiff's case should be dismissed, the Court need not consider the other pending motions, which it will deny as moot.

**IT IS THEREFORE ORDERED** that

1. Defendant's First Amended Motion to Dismiss Pursuant to Rule 12 (**Doc. 84**) is **GRANTED**;

2. Plaintiff's Motion for Leave of Court to File Plaintiff's Second Amended Complaint (**Doc. 67**) is **DENIED**;

3. Defendant's Motion to Dismiss Pursuant to Rule 12 (**Doc. 76**) is **DENIED** as **MOOT**;

4. Plaintiff's "Notice of Objection to Order (Doc. 93) Granting Defendant Abbott's Motion to Stay the Rule 16 Conference and Discovery (Doc. 88) Pursuant to Rule 72(a) Fed. R. Civ. P." (**Doc. 94**) is **DENIED** as **MOOT**;

5. Defendant's "Motion to Strike Plaintiff's Reply Briefs [Doc. 98-99]" (**Doc. 100**) is **DENIED** as **MOOT**;

6. Plaintiff's Motion to Dismiss Without Prejudice (**Doc. 102**) is **DENIED** as **MOOT**; and

7. Plaintiff's case is **DISMISSED** as to all Defendants.

_____
SENIOR UNITED STATES DISTRICT JUDGE